### JEFFERSON J. HUGHES *vs.* EDWARD E. WILKINSON.

A *scire facias* against terre-tenants may be either general against all the tenants, or against the terre-tenants, naming them; and though they must all be summoned by the sheriff, it is not necessary that they should be named in the writ. *Semble* as to heirs.

Where the plaintiff and defendant claim title from the same source, it is only necessary for the plaintiff to show title in that common source. But it is well settled, that the defendant is not thereby precluded from showing that he claims title from another source; and where the defendant justifies his possession by showing that he holds it under another deed than that shown by the plaintiff, the effect of the proof of title from a common source is destroyed, and the plaintiff is put to the proof of his title without regard to the common source of title.

It is not necessary, in such case, for the defendant to make full proof of the validity of his title; for his possession under his deed from a stranger, if it be *bonâ fide*, not collusive, is sufficient to rebut the proof of title from a common source made out in the first instance by the plaintiff, to cast upon the plaintiff the burden of proving his title by regular deraignment, or showing that the title set up by defendant is invalid.

ON appeal from the circuit court of Yazoo county; Hon. E. G. Henry, judge.

This was an action of ejectment, instituted by Wilkinson to recover an undivided one half interest in two lots in Yazoo City.

The consent rule was entered into by Hughes. Wilkinson claimed under one John G. Rutherford, by virtue of a judgment rendered in 1833 in favor of Lucas & Eskridge, on which several executions had issued and been returned unsatisfied; it was proved by the deposition of Mrs. Eskridge, that Eskridge, one of the firm of Lucas & Eskridge, died in 1836, and it was admitted upon the trial that Lucas, the other member, died in 1838, notwithstanding which a *scire facias* issued in the year 1842, to revive this judgment in the name of Lucas & Eskridge (both dead) against the heirs and terre-tenants of defendant John G. Rutherford, then alleged to be dead also. Upon this *sci. fa.* judgment of revivor was entered in 1843 or 1844, and upon the judgment so revived, an execution issued, and one half of the lots in controversy was levied upon and sold.

The circuit court held, that this judgment so revived was not void, but voidable only, and that a sale made under it would be valid.

The circuit court instructed the jury for the plaintiff as follows : —

1st. That if they believe from the evidence, that plaintiff and defendant claim title to the lot sued for under execution sales upon judgments against John G. Rutherford, and that that under which plaintiff claims is oldest, the law is for the plaintiff.

2d. That tax collector's deed only conveyed such title as Keyser & Maynard, to whom it was assessed, had.

3d. That proof of an actual ouster is not necessary.

4th. If the jury believe from the evidence that the defendant, or those under whom he claims, went into possession of the property in dispute under a sheriff's deed, and claiming title thereto, before the purchase by the plaintiff, such entry and claim of title, are circumstances from which the jury may infer an actual ouster.

Defendant asked the following instructions, the first of which was given, and the second refused : —

1st. Plaintiff must recover upon the strength of his own title, and if jury believe from the evidence that defendant claims under any deed not shown to be a common link in the chain of

title of both parties, it is necessary for the plaintiffs to trace their title from the general government.

2d. This being an action of ejectment for the recovery of an undivided half interest in two lots, plaintiff cannot recover without proof that plaintiff has been forcibly held out of possession, or that defendant and those under whom he claims have been in the exclusive receipt of the rents and profits.

*N. G.* and *S. E. Nye*, for appellant.

A judgment cannot be rendered up in favor of a person not in existence. 11 S. & M. 284; *Kelly* v. *Hooper*, 3 Yerger.

The record of the judgment on *scire facias* should not have been read to the jury; the *sci. fa.* nowhere mentioned, what lands had descended to the heirs, nor did the return of the sheriff show; these omissions rendered the judgment void. *Commercial Bank of Manchester* v. *Kendall*, 13 S. & M. 278.

The defendant below only entered into a special consent rule, confessing lease and entry; this being an action by one tenant in common against his cotenant, it was all he was required to do; the ouster must be proved upon trial. The consent rule in ejectment invariably precedes the plea of not guilty, and so forms part of the pleading; this consent rule as drawn up, and which precedes the plea of not guilty, is special and confesses lease and entry only; the clerk in making up the minutes, states that defendant confessed lease, entry, and ouster; there was no necessity for any entry at all to show the state of pleadings, they speak for themselves, and his entry was a work of supererogation, entirely unnecessary, and proved by the pleadings themselves to be false; yet the court instructed the jury that under the pleadings in this cause, it was not necessary that an ouster should be proved; this is manifest error, for there was no proof of ouster. See *Harman* v. *James*, 7 S. & M. That a special consent rule forms part of the pleadings, see Adams on Ejectment, title " Special consent rule," and form in appendix to same.

The defendant had one deed, it is true, derived from the same source that Wilkinson derived his title from, but then he introduced other deeds and muniments of title showing that he de-

rived from other sources. We think that in a case of that kind plaintiff was compelled to go back to the general government for title. It is true that when both parties claim from the same general or common source, that the plaintiff need go back no further; but we do not understand that when a defendant has several deeds or sources of title, and one of them proves to be a source common with that of the plaintiff, that he is excused from tracing to the general government.

*Yerger* and *Rucks*, on the same side.

This case must be reversed for the following reasons: —

1. Because the court erred in permitting the judgment on the *scire facias*, and the *scire facias* itself to be read without the *scire facias* showing on its face who were the heirs of Rutherford and the terre-tenants. 2 Tidd's Prac. 1114, 1118.

2. Because the court refused a new trial, the plaintiff not showing any execution on the judgment founded on the *scire facias*, by virtue of which he purchased the land.

3. Because the court excluded the testimony of Mrs. Eskridge, which would have proved that Lucas & Eskridge, the plaintiffs in the judgment on the *scire facias*, were dead when said judgment on said *scire facias* was rendered, and is consequently a nullity; the rule of law being that a judgment in favor of a dead man is an absolute nullity. 1 Petersdorff, Com. L. tit. Abatement, 1, 2; Tidd's Prac. 932, 1110; 6 S. & M. 207; *Smith* v. *Montgomery*, 11 Ib. 284. The death being matter *in pais* could only be proved by parol testimony; hence it was error to exclude from the jury proof of the death of Lucas & Eskridge.

4. The court erred in refusing a new trial, because the plaintiff did not show that Rutherford, under whom he claimed, had title to the land. A plaintiff in ejectment must recover on the strength of his own title, and cannot rely on the weakness of the defendant's title.

*D. Mayes*, for appellee.

The judgment in favor of Lucas and Eskridge, cannot be attacked to show its want of validity in this collateral way. If

the judgment can at all be questioned and vacated on the ground of their death, it can only be done by the defendants against whom it was rendered, or their representatives, against the representatives of L. and E. by a direct proceeding." It is a question with which strangers to the record cannot interfere, any more than if there was an error of law instead of fact. *Harrington* v. *O'Riley*, 9 S. & M. 218, and authorities cited; 2 Saund. 101, and note.

2. If they might raise the question in any case where its decision was important to some right of theirs, they could not do so here, for it would only show the judgment on the *scire facias* erroneous, and not void. *Harrington* v. *O'Riley*, before cited; *Drake* v. *Collins*, 5 How. R. 256, and being but an error for which in a proper proceeding the judgment might be set aside, the plaintiff's title could not be defeated even if the judgment had been reversed. *Doe* v. *Swiggett*, 5 Blackf. 328; *Harrington* v. *O'Riley*, before cited.

3. But if no *scire facias* had issued, the sheriff's sale would have passed a good title, notwithstanding the death of the plaintiffs in the execution. *Michell* v. *Hodge*, not reported; *Doe, ex dem. Shelton* v. *Hamilton*, 1 Cushm. 497, and cases there cited; *Drake* v. *Collins*, before cited.

A party will not be permitted to stand by and permit instructions to be given without opposing them, and after taking his chance before the jury and losing there, come forward for the first time on a motion for a new trial, and object that the instructions were erroneous. *Wilson* v. *Owens*, 1 How. 126; *Irwin* v. *Jones*, Ib. 497; *Patterson, &c.*, v. *Phelps*, Ib. 572. The case of *Wolfe* v. *Dowell*, 13 S. & M. 103, does not sustain the point to which it is cited. It is there held, and I admit correctly, that the plaintiff in the first instance need go no further than the title of the person under whom they both claim. But the defendant may set up a title adverse to that person, and if he does the plaintiff must show such title to be invalid, or produce some superior title or fail.

In *Robinson* v. *Parker*, 4 S. & M. 114, it is held, that where the plaintiff, who claims under sale by virtue of an execution, sues the judgment debtor, the debtor cannot deny his title; that

he is estopped. If he is estopped, all who claim under him stand as he does. They are privies, and although they may show that they have a valid title derived from another source, and until that is shown it stands a *primâ facie* case for the plaintiff. 5 S. & M. 486.

Mr. Justice HANDY delivered the opinion of the court.

Several objections to the judgment in this case have been presented in behalf of the plaintiff in error; but as the merits of the case will probably be determined by two of the points, we deem it unnecessary to consider the others.

The first of these points is, that the *scire facias*, under which the execution was awarded by virtue of which the land in controversy was sold, was void, because it did not contain on its face the names of the heirs and terre-tenants of Rutherford, the original defendant in the judgment; nor did it show the lands of which they were alleged to be heirs and terre-tenants.

It appears that the names of the heirs and terre-tenants, though not mentioned in the *scire facias*, were entered by the clerk on the back of it, as the parties to be summoned, and that they were summoned by the sheriff.

It is held that a *scire facias* against terre-tenants may be either general against all the terre-tenants, or against the terre-tenants, naming them; and though they must all be summoned by the sheriff, it is not necessary that they should be named in the writ. Lord Raymond, 669; Bac. Abr. title Scire Facias, c. 5; 2 Har. & John. 74. The same principle appears to apply to heirs.

It does not appear to be necessary to specify the lands in the writ. When the heir is summoned, he can either contest the plaintiff's right to have execution of the lands which have come to him by inheritance, or he can plead nothing by descent; and as to neither of these defences, is it necessary that the lands should be specified. As to the terre-tenant, he is presumed to know of what lands he is tenant, and under what right he holds them, and cannot be prejudiced by the want of a description of the lands; and in no precedent we have been able to find, is

51*

there a description of the lands in the *scire facias.* 2 Harris, Mod. Entries, 487, 491.

The other objection goes to the failure of proof of the title of the plaintiff on the trial below.

The plaintiff's title was derived from one Rutherford. After showing several deeds to antecedent parties, through whom Rutherford's title was derived, and a deed to him, the judgment against him and his heirs and terre-tenants, and the sheriff's deed to the plaintiff, the plaintiff, in order to show that both parties claimed title from the same source, offered in evidence and read a deed from one Hyatt to the defendant, and a sheriff's deed to Hyatt, who was the purchaser of the land at sheriff's sale under a junior execution against Rutherford. The defendant then offered in evidence a deed to him from one Wright, also a deed from the tax collector for the land. And under this state of case, the question is presented, whether the plaintiff proved a sufficient title to enable him to recover.

It is not denied, that when the plaintiff and defendant claim title from the same source, it is only necessary for the plaintiff to show title in that common source. But the rule is well settled, that the defendant is not thereby precluded from showing that he claims title from another source. *Wolfe* v. *Dowell*, 13 S. & M. 103; *Smith* v. *Otley*, 26 Miss. 291. When, therefore, the defendant justifies his possession by showing that he holds it under another deed than that shown by the plaintiff, the effect of the proof of title from a common source is destroyed, and the plaintiff is put to the proof of his title without regard to the common source of title. Nor is it necessary for the defendant to make full proof of the validity of his title. His possession under his deed from a stranger, if it be *bonâ fide* and not collusive, is sufficient to rebut the proof of title from a common source made out in the first instance by the plaintiff, and to cast upon the plaintiff the burden of proving his title by regular deraignment, or of showing that the title set up by the defendant is invalid. If he fails to do this, he neither shows that he is entitled to the possession, nor that the defendant is wrongfully in possession.

The instructions granted and refused by the court below are not in conformity to this view of the subject, and the judgment is therefore reversed, and the case remanded for a new trial.